UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**ONE ATTIC ETRUSCAN VOTIVE STATUETTE OF A FEMALE FIGURE,**<br><br>Defendant. | Civil Action No. 19-3677 |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW, Plaintiff the United States of America, by and through the United States Attorney for the District of Columbia, and brings this Verified Complaint for Forfeiture *in Rem* against the defendant property, namely: one ancient Attic Etruscan votive statuette of a female figure wearing a long chiton-style tunic, hands mutilated, with intricate hair (the "Defendant Property"), which is depicted in Attachment A.  The United States alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

### THE DEFENDANT PROPERTY

1. The Defendant Property is an ancient Attic Etruscan votive statuette dated back to the fifth century B.C.E.  The Defendant Property is in the possession of Homeland Security Investigations ("HSI").

### NATURE OF ACTION AND THE DEFENDANT IN REM

2. This *in rem* forfeiture action arises out of an HSI investigation into the theft of the Defendant Property stolen from Italy in violation of Italian cultural patrimony law.  The

Defendant Property was subsequently transported in interstate commerce in violation of 18 U.S.C. § 2314 (Interstate Transportation of Stolen Property) and 18 U.S.C. § 2315 (Possession of Stolen Goods).

3. The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as property constituting or derived from the proceeds of the interstate transportation of stolen property and possession of stolen goods and 28 U.S.C. § 2461, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 2314 and 2315.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

5. Venue is proper pursuant to 28 U.S.C. §§ 1395(b) and (c) because the Defendant Property was in the District of Columbia.

## FACTS GIVING RISE TO FORFEITURE

**I.   Italian Law Enforcement Investigation**

6. The Carabinieri is the national police authority in Italy, with jurisdiction over military and civilian populations. On or about September 5, 2017, the Comando Carabinieri Tutela Patrimonio Culturale (i.e. Carabinieri Protection of Cultural Heritage Command, hereinafter, "TPC") submitted a request for assistance to U.S. law enforcement pertaining to the Defendant Property. At that time, the Defendant Property was being offered for sale by an Art Gallery in the United States ("Art Gallery 1").

7. Art Gallery 1 displayed the Defendant Property in a catalogue titled July 2017, No. 1, which was available on Art Gallery 1's website.

8. Based on the TPC's review of photographs of the Defendant Property, the TPC identified the Defendant Property as Italian cultural patrimony that Gianfranco Becchina acquired in violation of Italian cultural patrimony law.

9. Art Gallery 1 advertised the Defendant Property in the catalog as "Young Beauty, Etruscan, Late 5th to 4th Century B.C., Bronze."

10. The TPC further provided the following background information regarding Gianfranco Becchina:

    a. Becchina is an Italian citizen who owned and operated a gallery in Basel, Switzerland called Palladion-Antike Kunst ("Palladion"). In 2002, the TPC executed a search warrant at Palladion's gallery and warehouse in coordination with Swiss authorities. During the search, the TPC seized numerous Italian archaeological artifacts and commercial documents and photographs of thousands of artifacts Becchina previously sold. The TPC determined that all of the seized artifacts originated from clandestine excavations in Italy and were smuggled abroad.

    b. Based on the documents and photographs seized from Palladion (hereinafter, the "Becchina Archive"), the TPC determined that once Italian artifacts arrived in Switzerland, Becchina would sell them through auction houses or directly to museums, collectors and dealers. A review of the Becchina Archive indicated that Becchina had operated a large-scale illicit antiquities trafficking business for decades.

    c. In 2005, at the completion of the Swiss investigation, the presiding Swiss magistrate transferred all evidence seized from Palladion, including artifacts and the Becchina archive, to the presiding Italian magistrate.

    d. Further examination of the Becchina Archive enabled the TPC to identify and recover a small portion of the artifacts that Becchina had already sold. Some of these artifacts were found in the collections of well-known museums and were subsequently repatriated to Italy

pursuant to agreements with the Italian Ministry of Cultural Heritage and Activities and Tourism (the "Ministry").

  e. In February 2011, charges against Becchina in Italy for illegally dealing in antiquities were terminated because the statute of limitations had expired. However, the court ordered the confiscation of artifacts that were seized from Palladion and noted in the Becchina Archive. In February 2012, following an appeal by Becchina, the Italian Supreme Court affirmed the order of confiscation.

 11. The TPC provided a report setting forth the expert opinion of Dr. Vincenzo D'Ercole, an archeologist assigned to the General Archaeological Directorate of the Ministry. In the report, Dr. D'Ercole made the following findings:

  a. The photographic reproductions of the Defendant Property shows a bronze Etruscan votive statuette, which depicts a female figure with a long chiton, hands mutilated, with particularly intricate hair, which dates back to the fifth century B.C. and which may be attributed to an Etruscan votive cache from Tuscany;

  b. There is no record of an export request (mandatory in Italy since 1909 in accordance with Italian law) and, in any case, such a request would have been refused as the statuette constitutes a part of the indivisible property of the Italian Nation;

  c. There is photographic and documentary validation present in the Becchina archive to demonstrate that the statuette was among the items looted and sold by Becchina. *Compare* Attachment A-1 (Becchina Archive photo) and Attachment A-2 (Art Gallery 1 advertisement for Defendant Property);

  d. The Defendant Property is the same statuette that Becchina sold to a gallery in the United States ("Art Gallery 2") (further described *infra*) on April 22, 1989; and

  e. Considering the information pertaining to the statuette's provenance, the

4

statuette was the object of illegal excavation, clandestine exportation, and contraband removed from Italy and illegally received abroad.

**II.     The Becchina Archive**

12.     In the Becchina Archive, objects are frequently depicted in Polaroid photographs taken at excavation sites or shortly after excavation. These photographs often show antiquities in fragments and/or still dirty.

   a. During the relevant time, Polaroid photographs were preferred by Italian looters to avoid distribution of the images beyond a circle of trusted co-conspirators.

   b. In addition, Polaroid cameras were often used by looters because photographs from a Polaroid camera do not have to be developed by a third-party who may report the photographs to law enforcement.

   c. Legitimate dealers and collectors typically preferred higher quality photographs when selling or insuring their pieces.

   d. In this instance there are Polaroid photographs of the Defendant Property among a group of other statuettes.

13.     The TPC provided U.S. law enforcement with copies of photographs and documents contained in the Becchina archive. Within a folder in the archive labeled "Etrurie" was an index card, attached to which was a photograph of the Defendant Property (depicted in Attachment A-1). Handwritten above the photograph to the right of the index card is the measurement, "11,5 cm". Typed to the upper left of the index card are the words, "1100 couleur." As further described below, the "1100" appears to be an identification number of the Defendant Property.

14.     A separate index card stapled to the first card contained a handwritten list of persons to whom the Defendant Property was attempted to be sold. The final entry on the index

card was an abbreviation of the name of the owner of Art Gallery 2 followed by the number "89."

15. Italian law enforcement and prosecutors have identified Art Gallery 2 as a key link in the chain that illegally brought artifacts out of Italy.

16. The Becchina Archive also contained a typed documented titled "Exportation," dated April 22, 1989, addressed to Art Gallery 2. The document contains a list of items that includes "Etruscan Bronze Statuette of a youth wearing chiton. H. 11,5 cm. Solid cast. Green patina. Right hand and fingers of the left hand missing, extremities of the feet 7 damaged. 5th century B.C." The description also bears a reference number of W1100-1, which corresponds to the number "1100," which was typed in the upper left hand of the index card described above.

17. At some point after it acquired the Defendant Property, Art Gallery 2 sold the Defendant Property to a collector. The collector had consigned the Defendant Property to Art Gallery 1.

18. Art Gallery 1's description of the Defendant Property ("Young Beauty, Etruscan, Late 5th to 4th Century B.C., Bronze") is consistent with the Becchina description.

19. Art Gallery 1 offered the Defendant Property for sale with a price of $95,000.

20. Law enforcement subsequently seized the defendant property for violations of the below statutes.

21. Law enforcement contacted the collector who consigned the Defendant Property for sale at Art Gallery 1. The collector agreed to waive any claim to the Defendant Property, and agreed that it should be returned to the Government of Italy.

-

### FIRST CLAIM FOR RELIEF
### (18 U.S.C. § 981(A)(1)(C))
**(Proceeds of the Interstate Transportation of Stolen Property, 18 U.S.C. § 2314)**

22. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 19 above as if fully set forth herein.

23. The Defendant Property, which was valued at more than $5,000, was transported in interstate commerce after it had been stolen, in violation of 18 U.S.C. § 2314.

24. As such, the Defendant Property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds of the interstate transportation of stolen property.

### SECOND CLAIM FOR RELIEF
### (18 U.S.C. § 981(A)(1)(C))
**(Proceeds of Possession of Stolen Goods, 18 U.S.C. § 2315)**

25. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 19 above as if fully set forth herein.

26. The Defendant Property, which was valued at more than $5,000, was possessed after it had been stolen and after it had been moved across state boundaries, in violation of 18 U.S.C. § 2315.

27. As such, the Defendant Property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds of the possession of stolen goods.

### THIRD CLAIM FOR RELIEF
### (19 U.S.C. § 1595a(c)(1))
**(Unlawful Importation, 19 U.S.C. § 1595(c))**

28. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 19 above as if fully set forth herein.

29. The Defendant Property is merchandise that was introduced into the United States contrary to law.

30. As such, the Defendant Property is subject to forfeiture, pursuant to 19 U.S.C. § 1595a(c)(1).

## PRAYER FOR RELIEF

31. WHEREFORE, the United States of America prays that notice issue on the Defendant Property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that a warrant of arrest *in rem* issue according to law; that judgment be entered declaring that the Defendant Property be forfeited for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: December 10, 2019

    Respectfully submitted,

    JESSIE K. LIU, D.C. Bar No. 472845
    United States Attorney

By:     /s/ *Zia Faruqui*
    ZIA M. FARUQUI, D.C. Bar No. 494990
    ARVIND K. LAL, D.C. Bar No. 389496
    Assistant United States Attorneys
    STEPHANIE WILLIAMSON, D.C. Bar 1044027
    Special Assistant United States Attorney
    555 Fourth Street, NW
    Washington, DC 20530
    (202) 252-7117

    *Attorneys for the United States of America*

# Attachment A

Images of the Defendant <u>in rem</u>

## Attachment A-1: Photograph of statuette attached to index card from the Becchina Archive



**Attachment A-2: Photograph of statuette from Art Gallery 1 Catalog July 2017, No. 1**



## 9  YOUNG BEAUTY

Etruscan, late 5th – 4th century B.C.
Bronze
H: 11.4 cm (4.48 in)

The artistic qualities of this solid cast figurine are remarkable; the piece could be placed among the best known examples of small scale Etruscan bronze sculpture. Both sophistication and elegance define the work, while the rendering of the human body gives a feeling of sensuality. The woman, apparently very young, is represented standing with her feet almost side by side and the left knee bent. The arms are outstretched and bent at the elbows, both hands are now missing. It is clear, however, that the arms were not shown in a praying pose. Similar compositions can be found among representations of either deities or mortals. The woman's attire, without a himation or any jewelry, looks rather simple though elegant; the lack of additional decoration would indicate she is neither a goddess nor a priestess. Most probably, her identity is that of a worshipper presenting gifts to a deity. The present preservation of the figure does not allow us to know the exact objects she once held; comparable figurines have a flower, fruit, cake, or a libation bowl.

She wears a plain, narrow, ankle-length chiton of Ionic type with short sleeves and a girdle. The neck line, seamlines and edges of the sleeves as well as the bottom of the skirt are accentuated by two incised lines (these simple lines may suggest embroidery, but no tassels hanging from the chiton on each shoulder appear). The fabric does not create folds and clings very close to the body. This effect helps to reveal that the body is slim and firm, with narrow hips. Such proportions, close to that of the boy's figure, indicate the youth of this female. The features of the young body are also seen in her small, but prominently shaped, breasts, positioned high on the chest. Although the tips of the feet are damaged, it seems that the toes were not indicated, the assumption being that she wears some kind of boots.

The composition is singular and the rhythm of the body parts participating in the simple movement is perfectly coordinated. The quiet stance is animated by the bent left knee, and the right hip has a prominent curve, allowing the torso to continue the sinuous line. The level of the shoulders is slightly asymmetrical; the right shoulder is lower than the left one as it corresponds to the more outstretched right arm. The balance of all counter-positions is harmonious, and it is reminiscent of the Polykleitan *contrapposto*.

The curving lines creating the thighs, hips, and shoulders are particularly beautiful and attractive, and more is revealed when the statuette is viewed as a piece of three-dimensional sculpture: characteristic are the soft and fluid transitions of the volumes. The perfectly smooth surface reflects the light; in contrast to the plain areas, the grooves that separate the hair strands create a sharper effect of light and shadow. This is especially noticeable when the piece is seen from the back; it may well be that handling the piece and the possibility of its being admired from all sides was the sculptor's concept.

The hair style (hair rolled up and held by the fillet) originated in the middle of the 5th century B.C. and remained popular further on. The hair exposes the forehead completely, the face is marked by wide-opened large eyes and long eye brows. The diadem, composed of two rows of large beads, adorns the head. The statuette is a solid cast and preserves a grey-green patina. The bronze was tooled after casting: the surface was polished and the details, such as eyes with the iris, the individual strands of hair, and parts of the diadem were all skillfully chiseled.

**VERIFICATION**

I, Bryan D. Brunner, a Special Agent with Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement agents and that everything represented herein is true and correct to the best of my knowledge and belief.

Executed on this 10th day of December, 2019.

/s/
Bryan D. Brunner
Special Agent
Homeland Security Investigations

I, Marc Hess, a Special Agent with Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement agents and that everything represented herein is true and correct to the best of my knowledge and belief.

Executed on this 10th day of December, 2019.

/s/
Marc Hess
Special Agent
Federal Bureau of Investigation

# CIVIL COVER SHEET

JS-44 (Rev. 5/12 DC)

## I. (a) PLAINTIFFS

United States of America

## DEFENDANTS

ONE ATTIC ETRUSCAN VOTIVE STATUETTE OF A FEMALE FIGURE

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Zia M. Faruqui, Assistant U.S. Attorney
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, N.W.
Washington, D.C.  20530

ATTORNEYS (IF KNOWN)

Unknown

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (●) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○1 | ○1 | Incorporated or Principal Place of Business in This State | ○4 | ○4 |
| Citizen of Another State | ○2 | ○2 | Incorporated and Principal Place of Business in This State | ○5 | ○5 |
| Citizen or Subject of a Foreign Country | ○3 | ○3 | Foreign Nation | ○6 | ○6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and **one** in a corresponding Nature of Suit)

- ( ) **A. Antitrust**
  - [ ] 410 Antitrust

- ( ) **B. Personal Injury/Malpractice**
  - [ ] 310 Airplane
  - [ ] 315 Airplane Product Liability
  - [ ] 320 Assault, Libel & Slander
  - [ ] 330 Federal Employers Liability
  - [ ] 340 Marine
  - [ ] 345 Marine Product Liability
  - [ ] 350 Motor Vehicle
  - [ ] 355 Motor Vehicle Product Liability
  - [ ] 360 Other Personal Injury
  - [ ] 362 Medical Malpractice
  - [ ] 365 Product Liability
  - [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
  - [ ] 368 Asbestos Product Liability

- ( ) **C. Administrative Agency Review**
  - [ ] 151 Medicare Act
  - **Social Security**
  - [ ] 861 HIA (1395ff)
  - [ ] 862 Black Lung (923)
  - [ ] 863 DIWC/DIWW (405(g))
  - [ ] 864 SSID Title XVI
  - [ ] 865 RSI (405(g))
  - **Other Statutes**
  - [ ] 891 Agricultural Acts
  - [ ] 893 Environmental Matters
  - [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

- ( ) **D. Temporary Restraining Order/Preliminary Injunction**

  Any nature of suit from any category may be selected for this category of case assignment.

  *(If Antitrust, then A governs)*

- (●) **E. General Civil (Other)**     OR     ( ) **F. Pro Se General Civil**

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 27 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Conditions
- [ ] 560 Civil Detainee – Conditions of Confinement

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [X] 690 Other

**Other Statutes**
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions
- [ ] 470 Racketeer Influenced & Corrupt Organization

- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

### G. *Habeas Corpus/ 2255*
- [ ] 530 Habeas Corpus – General
- [ ] 510 Motion/Vacate Sentence
- [ ] 463 Habeas Corpus – Alien Detainee

### H. *Employment Discrimination*
- [ ] 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)

*(If pro se, select this deck)*

### I. *FOIA/Privacy Act*
- [ ] 895 Freedom of Information Act
- [ ] 890 Other Statutory Actions (if Privacy Act)

*(If pro se, select this deck)*

### J. *Student Loan*
- [ ] 152 Recovery of Defaulted Student Loan (excluding veterans)

### K. *Labor/ERISA (non-employment)*
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 740 Labor Railway Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### L. *Other Civil Rights (non-employment)*
- [ ] 441 Voting (if not Voting Rights Act)
- [ ] 443 Housing/Accommodations
- [ ] 440 Other Civil Rights
- [ ] 445 Americans w/Disabilities – Employment
- [ ] 446 Americans w/Disabilities – Other
- [ ] 448 Education

### M. *Contract*
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholder's Suits
- [ ] 190 Other Contracts
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### N. *Three-Judge Court*
- [ ] 441 Civil Rights – Voting (if Voting Rights Act)

---

**V. ORIGIN**
- (●) 1 Original Proceeding
- ( ) 2 Remand from State Court
- ( ) 3 Remanded from Appellate Court
- ( ) 4 Reinstated or Reopened
- ( ) 5 Transferred from another district (specify)
- ( ) 6 Multi-district Litigation
- ( ) 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
18 U.S.C. § 2314, 18 U.S. C. § 2315, 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461- possession of stolen goods

**VII. REQUESTED IN COMPLAINT** — CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23   **DEMAND $**   **JURY DEMAND:** Check YES only if demanded in complaint  YES [ ]  NO [X]

**VIII. RELATED CASE(S) IF ANY** (See instruction)  YES [ ]  NO [X]  If yes, please complete related case form

**DATE:** 12/10/2019   **SIGNATURE OF ATTORNEY OF RECORD**  /s/Zia M. Faruqui

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

   **I.**   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

   **III.**  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

   **IV.**  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

   **VI.**  CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

   **VIII.** RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should endure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) | Case No. 19-cv-3677 |
| **ONE ATTIC ETRUSCAN VOTIVE STATUETTE OF A FEMALE FIGURE,** | ) ) ) ) | |
| Defendant. | ) ) | |

## WARRANT FOR ARREST *IN REM*

TO:   THE UNITED STATES MARSHAL'S SERVICE AND/OR ANY OTHER DULY AUTHORIZED LAW ENFORCEMENT OFFICER:

   WHEREAS a Verified Complaint for Forfeiture *In Rem* has been filed in the United States District Court for the District of Columbia, on the 10th day of December, 2019, alleging that the above defendant property are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a);

   YOU ARE, THEREFORE, HEREBY COMMANDED to serve the defendant property, thus bringing, within the jurisdiction of the Court, said defendant properties, more fully described as:

   **ONE ATTIC ETRUSCAN VOTIVE STATUETTE OF A FEMALE FIGURE,**

YOU ARE FURTHER COMMANDED, promptly after execution of this process, to file the same in this Court with your return thereon, identifying the individuals upon whom copies were served and the manner employed, unless, pursuant to Rule G(3)(c)(ii)(A) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the defendant properties are in the government's possession, custody, or control.

Dated: December 10, 2019

                                                    _____
                                                   Clerk of the Court

By:      _____
            Deputy Clerk